# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
    **JUDGE**

## LETTER OPINION

July 31, 2007

Nicholas Martino, Jr.
33 Regina Road
Morganville, NJ 07751

    (*Attorney for Plaintiff*)

Kevin McNulty
Gibbons, P.C.
One Gateway Center
 Newark, NJ 07102

    (*Attorney for Defendants CSX Transportation, Inc.,*
    *Gary Kamboorian, and Solomon Hicks*)

Thomas Keenan
McCarthy & Jennerich
47 Orient Way
Rutherford, NJ 07070

    (*Attorney for Defendants Ridgefield Police Department*
    *and Borough of Ridgefield*)

    Re:    *Lopez v. CSX Transportation, Inc., et al.*
            Civil Action No. 06-1802 (WJM)

Dear Litigants:

    This matter comes before the Court on Defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56.  Oral arguments were held on June 20, 2007.  For the reasons set forth below, Defendants' motions are **GRANTED**, and Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

I.   BACKGROUND

This civil rights action arises from Plaintiff Elvis Lopez's arrest and detention. Plaintiff's complaint alleges claims under both federal and state law for false arrest, false imprisonment, malicious prosecution, and discriminatory arrest and prosecution. Plaintiff seeks $2 million in damages. The following facts are not in dispute.

   A.   The Investigation

On January 5, 2005, the North Bergen Police discovered CSX trailer truck driver, Luis Velasquez, in a truck containing stolen electronic goods from the CSX Intermodal Terminals' Little Ferry Yard ("CSX Yard"), a secured shipping yard. Velasquez had recently left the CSX Yard in the truck found with the stolen goods. Next to the truck was a car that contained more of the stolen goods. The car was traced to Felipe Lara, another CSX employee.

Officers Solomon Hicks and Gary Kamboorian, state-appointed railroad policemen employed by CSX Transportation, Inc., investigated the theft. They learned that an inactive, but possibly reactivated, 1999 booking number was used to permit the exit of the truck from the CSX Yard, and that Plaintiff, who was the gate clerk on duty at the time, had processed Velasquez's booking number about one hour before the trailer truck was found with the stolen goods.

Plaintiff, as a gate clerk for CSX, permits the exit of trucks from the secured yard by: (1) accepting a randomized booking number provided by the truck driver, (2) matching the booking number and equipment against a corresponding entry in the computer system, (3) verifying certain additional information against the entry in the computer system, and then, (4) issuing a computer generated "TIR" document to the driver. A TIR report contains certain information pertaining to the truck, trailer, and driver and is needed for a driver to leave the CSX Yard. The computer system will only issue a TIR document if the booking number is valid or has been reactivated in some manner. A booking number is generally active for, at most, a period of days. Drivers do not have access to the computer program that generates booking numbers, and the odds of guessing a valid booking number are extremely low.

After their investigation, which included an interview with Plaintiff and a review of CSX computer records, Officers Hicks and Kamboorian believed that Plaintiff would have and should have known or noticed that the TIR was outdated, and that Plaintiff did not issue the TIR accidentally but rather to purposefully assist in the theft of goods. Furthermore, Officers Hicks and Kamboorian were informed by a supervisor at the CSX Yard that both Plaintiff and Lara (whose car was found with stolen goods) stayed late on the night before the theft purporting to do trailer inventory or park trailers. The supervisor noted that Plaintiff's inventory of the trucks on the lot was rare, and that Lara acted contrary to his normal departure habits.

Based on the above information, Officer Hicks swore out a criminal complaint of burglary, conspiracy to commit burglary, theft of movable goods, and facilitation of theft against

Plaintiff on January 12, 2005. A Ridgefield detective, Richard Besser, assisted Officer Hicks in preparing the criminal complaint form.

### B.     Arrest and Prosecution

After Plaintiff's arrest, he was processed at the Ridgefield Police Department and bail was set. Pursuant to Officer Hicks' sworn affidavit, an arrest warrant charging Plaintiff with burglary, conspiracy to commit burglary, theft of movable property, and facilitation of theft was issued by the Ridgefield Municipal Court. He was detained in the Bergen County jail for nine days before posting bail. Later, Plaintiff's charges were downgraded to defiant trespass and possession of stolen property by the Bergen County Prosecutor's Office. Thereafter, Judge Louis J. Denise dismissed all charges upon the request of the Ridgefield Municipal Prosecutor on December 16, 2005.

### C.     Complaint

Plaintiff filed this suit on April 17, 2006. The Complaint alleges that Defendants violated Plaintiff's federal and state constitutional rights. Specifically, Plaintiff claims that he was falsely arrested, falsely imprisoned, maliciously prosecuted, and discriminated by all Defendants. Discovery closed in this case on December 29, 2006. Defendants' motions for summary judgment are now before the Court.

## II.   DISCUSSION

There are two motions for summary judgment: (1) by CSX Transportation, Inc. and CSX Officers Gary Kamboorian and Solomon Hicks (collectively "CSX Defendants"); and (2) by the Borough of Ridgefield and Ridgefield Police Department (collectively "Ridgefield Defendants"). These motions are addressed in turn.

### A.     Summary Judgment Standard

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Celotex*, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *Id.* at 249.

### B. CSX Defendants' Motion for Summary Judgment

CSX Defendants argue that summary judgment should be granted because: (1) the officers had probable cause for the arrest, and therefore, Plaintiff has no cause of action; and (2) in the alternative, they are entitled to qualified immunity because the officers held a reasonable, even if mistaken, belief that probable cause existed. The Court agrees.

The central analysis for this Court is whether probable cause existed. A common required element in asserting claims under 42 U.S.C. § 1983 for false arrest, false imprisonment, and malicious prosecution is lack of probable cause to arrest, imprison, and initiate prosecution. *See Garlanger v. Verbecke*, 223 F. Supp. 2d 596, 606 (D.N.J. 2002)(citing *Gallo v. City of Phila.*, 161 F.3d 217, 224 (3d Cir. 1998), *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997), *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). Similarly, lack of probable cause is a required element in the related state law claims. *See Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427, 451 (3d Cir. 2005). Additionally, under a qualified immunity analysis, the existence of probable cause insulates Defendants from suit as Plaintiff cannot prove the first step of the analysis–that there was a constitutional violation of Plaintiff's rights. *See Wright v. City of Phila.*, 409 F.3d 595, 601 (3d Cir. 2005).

Whether the existence of probable cause is a defect in Plaintiff's claims or provides Defendants with qualified immunity is a debate of form, not substance. In either analysis, as Plaintiff recognizes, the existence of probable cause is fatal to Plaintiff's suit. Although a determination of probable cause is usually one of fact, a court may grant summary judgment and conclude that probable cause existed as a matter of law "if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," or the determination of probable cause does not involve disputed issues of fact. *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006)*; Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003).

#### 1. False Arrest and False Imprisonment Claims

Probable cause requires more than mere suspicion but need not be sufficient to prove guilt beyond a reasonable doubt. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995). To determine whether there was probable cause to arrest, courts examine the elements of the crime at issue and assess whether any particular set of facts and circumstances known to the

officers at the time of arrest were sufficient for a prudent person to believe that the suspect committed the offense. *See Wright*, 409 F.3d at 602. This inquiry "looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were in retrospect, accurate." *Id.* A plaintiff cannot maintain a false arrest claim if there was probable cause for at least one of the offenses for which he was arrested. *See Johnson v. Knorr*, 477 F.3d 75, 84-85 (3d Cir. 2007). Where officers have probable cause to arrest, a claim of false imprisonment cannot be sustained on a detention pursuant to the legal arrest. *See Groman*, 47 F.3d at 636.

Plaintiff was charged with several crimes including facilitation of theft of movable goods. It is undisputed that a theft of movable goods occurred on January 5, 2005. In New Jersey, accomplice liability for theft requires that the offending person committed theft by either his own conduct or the conduct of another person for which he is legally accountable, or both. *See N.J.S.A.* 2C:20-3; 2C:2-6. A person is legally accountable for the conduct of another person if he aids or agrees or attempts to aid another person in planning or committing the commission of an offense with the purpose of promoting or facilitating the commission of the offense. *See N.J.S.A.* 2C:2-6.

Officers Hicks and Kamboorian discovered the following relevant facts during the course of the investigation and before Plaintiff's arrest. Plaintiff was the gate clerk on duty when Luis Velasquez left the secured CSX Yard in his truck. (Lopez Cert. ¶¶ 1, 4.) In order for Plaintiff to allow Velasquez's truck to leave the CSX Yard, Plaintiff processed the booking number provided by Velasquez. (*Id.*) Although only valid booking numbers can be matched up with entries in Plaintiff's computer terminal, the waybill was dated 10/28/99 on the TIR report that he gave to Velasquez and on the computer screen.[1] (Hicks Cert. Ex. L.) It is generally understood at the CSX Yard that booking numbers expire after a few days. (Hicks Cert. ¶ 16.) Velasquez's truck was found about one hour later by police officers with stolen goods from the CSX Yard. (Hicks Cert. Ex. A.) Furthermore, Plaintiff did an inventory on trailers–a rare occurrence–and worked late the night before the theft, and Lara was also unusually late in leaving the same night. (Hicks Cert. Ex. P.)

Here, it was objectively reasonable for CSX Defendants to conclude that Plaintiff aided the theft of electronic equipment. By Plaintiff's own admission, he was responsible for processing the paperwork that allowed Luis Velasquez to leave with the trailer. (Lopez Cert. ¶ 4.) CSX Defendants reasonably determined that Velasquez left with the stolen equipment based upon Velasquez's inconsistent statements, the timing of the events, and the fact that the goods were taken from other trailers parked in the CSX Yard.

---

[1] During oral arguments, Plaintiff's counsel confirmed that the 1999 date was available for viewing on the computer terminal, but argued that Plaintiff did not actually see the 1999 date, because he failed to scroll through the second page. Whether he did nor did not actually see the date is irrelevant to the Court's probable cause determination since the analysis of probable cause requires the Court to consider the circumstances as known to the investigating police officers. For the purposes of this summary judgment motion, the Court assumes that the Plaintiff did not actually see the date on the computer screen although it was available for viewing.

Plaintiff had a duty as the gate clerk to verify the information presented to him and to review the pertinent information. CSX Defendants surmised that Plaintiff was likely involved since the booking number that he processed was clearly issued five years prior to the date that he generated the TIR report allowing Velasquez to leave the CSX Yard. Regardless of whether Plaintiff's failure to identify this glaring error was sufficient in and of itself to constitute probable cause for his arrest, CSX Defendants' probable cause determination was strengthened by Plaintiff's unusual activities proximate in time to the theft and that links Plaintiff to Lara, whose car was involved in the theft. Additionally, Plaintiff's unusual activities the night before the theft confirmed for the police officers his intent to aid the theft. Thus, these facts in aggregate and considered in the context of the circumstances surrounding the theft were sufficient to constitute probable cause.

Plaintiff's arguments in opposition are misguided. First, Plaintiff draws the Court's attention to the factual impossibility of the crimes with which Plaintiff was charged–burglary and theft. Plaintiff fails to note that he was charged with accomplice liability for the burglary and theft.[2] As "there need not have been probable cause supporting charges for every offense for which an officer arrested a plaintiff . . . to defeat a claim of false arrest," Plaintiff's claim of false arrest fails as probable cause existed to arrest Plaintiff for the facilitation of theft. *See Johnson*, 477 F.3d at 85.

Second, Plaintiff emphasizes that certain evidence, including statements by Luis Velasquez and the on-duty security guard that the truck was empty when it left the CSX Yard as well as videotape of the inspection by the security officer, indicate a lack of probable cause. CSX Defendants, however, reasonably determined that: (1) Velasquez's statements were self-serving and not credible in light of other contemporaneous inconsistent statements; and (2) the security guard's statement was similarly self-serving and lacked credibility since the videotape surveillance showed an improper check of the trailer, and CSX Defendants held suspicions that the guard was part of the conspiracy. (Hicks Cert. 3, Exs. A, C.) The Court's probable cause review allows room for determinations of credibility and judgment by the police officers so long as the totality of circumstances are sufficient for a prudent person to believe that the suspect committed the crime. *See Wright*, 409 F.3d at 603 (finding that police officers should consider, but need not believe, a plaintiff's claim of innocence so long as their belief was "not unreasonable in light of the information the officers possessed at the time"). Even viewing the facts most favorably for Plaintiff, these statements and videotape fail to undermine CSX Defendants' reasonable belief in Plaintiff's commission of the crime.

---

[2] Although the Court recognizes that the criminal complaint was inartfully drafted, it is satisfied that the complaint charges Plaintiff with conspiracy and facilitation in addition to burglary and theft. (Hicks Cert. Ex. Q.)

Accordingly, the Court finds that Plaintiff's arrest was supported by probable cause.[3] As Defendants held probable cause for Plaintiff's arrest, Plaintiff's related detention pursuant to the lawful arrest cannot establish a claim of false imprisonment.

### 2. Malicious Prosecution

To prove malicious prosecution, a plaintiff must show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson*, 477 F.3d at 81-82 (citing *Estate of Smith*, 318 F.3d at 521). Although allegations of false arrest, false imprisonment, and malicious prosecution commonly appear together in § 1983 suits, the analysis of false arrest (including its related claim of false imprisonment) and malicious prosecution differs in that a "claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment and not more." *Id.* at 82 (internal citations omitted). Thus, while probable cause to support any one of the multiple offenses charged may defeat a claim of false arrest, a "cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge which . . . is likely to have placed an additional burden on the plaintiff." *Id.* at 85. Nonetheless, where a defendant police officer's actions in prosecuting a charge unsupported by probable cause are intertwined with a lawful arrest and their involvement ends at the time of the arrest, a malicious prosecution claim cannot be sustained. *See id.* at 82 (distinguishing circumstances where a police officer's conduct after the lawful arrest supplied additional information leading to the initiation of prosecution on different charges); *Wright*, 409 F.3d at 604 (finding that a malicious prosecution claim could not be sustained where the defendant officers

---

[3] The Court recognizes that the facts in this case are just within the bounds of probable cause. Even if the Court were to find, which it does not, that the facts failed to show probable cause for Plaintiff's arrest, Defendants are nevertheless entitled to qualified immunity. Qualified immunity shields law enforcement officers that reasonably, "but mistakenly conclude that probable cause to make an arrest is present." *Orsatti*, 71 F.3d at 483. Where a police officer obtains an arrest warrant, the standard for determining the reasonableness of an official's belief in the existence of probable cause is "whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions." *Id.* If "officers of reasonable competence could disagree on [whether a warrant should issue], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Here, CSX Defendants understood that the 1999 date, a red flag that should have caused Plaintiff concern, was visible on both the TIR report and computer screen. The credibility of Plaintiff's claim that he did not in fact see the date, whether through neglect or mistake, is a determination properly within the bounds of the investigating police officers. *See e.g.*, *Wright*, 409 F.3d at 603 (police officers could reasonably discount a plaintiff's explanations or protestations of innocence). At the very least, it would not have been so clear that a reasonably well-trained officer would have believed that the facts known to CSX Defendants were insufficient to establish probable cause. Thus, the Court finds that the CSX Defendants would have additionally been immune from suit based upon an objectively reasonable belief that probable cause existed.

held probable cause to arrest the plaintiff on at least one charge, and the circumstances leading to the arrest and prosecution were intertwined).

Plaintiff was charged in the criminal complaint with burglary, conspiracy to commit burglary, theft of movable property, and facilitation of theft arising from a singular set of facts. These charges were later downgraded to defiant trespass and possession of stolen property by the Bergen County Prosecutor's Office.[4] Plaintiff has not provided evidence to suggest that any of the Defendants were involved in the decision to downgrade or prosecute the case against Plaintiff beyond that involved with Plaintiff's lawful arrest. To the contrary, Defendant Hicks certified that no one at CSX was involved in the decision to downgrade or prosecute the charges after Plaintiff's arrest. (Cert. Hicks 9-10.)

The facts in this case align themselves more closely to the circumstances in *Wright* than *Johnson*. Here, Defendants' involvement with Plaintiff's prosecution was tied to the investigation of a singular incident of theft and ended after the arrest. Unlike in *Johnson*, Defendants did not take affirmative steps after Plaintiff's arrest to prosecute Plaintiff for additional unrelated crimes, and there are no allegations that Defendants fabricated any events that took place in order to substantiate the fraudulent charges. *See e.g.*, *Johnson*, 477 F.3d at 84-85. Thus, the facts of this case cannot sustain a claim of malicious prosecution.[5] Accordingly, the Court grants summary judgment to CSX Defendants.[6]

### C.     Ridgefield Defendants' Motion for Summary Judgment

As there was probable cause for the arrest and detention of Plaintiff, the Court need not address the alternative grounds for summary judgment posed by Ridgefield Defendants. Nevertheless, the Court notes that the additional grounds for summary judgment asserted by Ridgefield Defendants are alone sufficient to grant summary judgment in their favor. In sum, Ridgefield Defendants argue that: (1) to the extent that Plaintiff's claims involve individual Ridgefield Defendants, they are independently entitled to qualified immunity; (2) they cannot be held liable under a theory of respondeat superior for the federal law claims; and (3) Plaintiff's state common law claims are barred by New Jersey's Tort Claims Act, 59:9-2(d). These arguments are addressed below.

---

[4] The Bergen County Prosecutor's Office is no longer a party in this case pursuant to this Court's Order dated September 11, 2006.

[5] Additionally, even if the Court were to assume that three of the four charges in the criminal complaint were initiated against Plaintiff without probable cause, it does not follow that Plaintiff's malicious prosecution claim could be sustained. Plaintiff does not assert, nor do the facts support, that prosecution for these additional charges "resulted in additional restrictions on his liberty beyond those attributable to the prosecution" on the charges for which there was probable cause. *Johnson*, 477 F.3d at n.14.

[6] Although Plaintiff's complaint alleges violations of 42 U.S.C. § 1981 & 1985, Plaintiff has neither opposed Defendants' motion for summary judgment on these issues, nor provided facts in support of his racial discrimination claims. Thus, the Court considers Plaintiff's discrimination claims abandoned.

### 1. Qualified Immunity

To determine whether individual Ridgefield Defendants are independently entitled to qualified immunity from Plaintiff's suit, the Court must assess whether the individual official's actions, or mistaken belief in the lawfulness of their actions, were objectively reasonable. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). Ridgefield Defendants argue that they cannot be held liable for the alleged false arrest, false imprisonment, or malicious prosecution, because their involvement with Plaintiff's arrest, imprisonment, and subsequent prosecution was limited to typing out the complaint. Richard Besser, the assisting Ridgefield officer, stated that Officer Hicks provided him "with facts underlying an investigation regarding" the stolen goods. (Besser Aff. ¶ 3.) He assisted Officer Hicks by typing the complaint, and Officer Hicks swore to its accuracy. Plaintiff's counsel confirmed during oral arguments that the Ridgefield Defendants are not alleged to have engaged further in Plaintiff's arrest, detention, and prosecution.

As the Ridgefield Defendants' knowledge of the facts arose only from the information provided by a state-appointed police officer, they are insulated from suit. Ridgefield Defendants' held a reasonable belief that probable cause existed for Plaintiff's arrest based upon the following facts supplied by Defendant Hicks: "The CSX Officers advised that Plaintiff was employed as a CSX clerk when the trailer was removed and that Plaintiff issued a document known in that industry as a 'TIR' with an outdated booking number that allowed one of the persons previously arrested to improperly remove the trailer from the CSX yard." (Besser Aff. ¶3.) It was objectively reasonable for Ridgefield Defendants to rely upon the representations of a state-appointed police officer regarding the facts of the investigation. The Ridgefield Defendants were under no obligation to audit the investigation of facts, nor were they in possession of any contradictory information. The facts provided to the Ridgefield Defendants were objectively sufficient to constitute probable cause to arrest Plaintiff for accomplice liability to theft. Even if this Court were to assume that the CSX Defendants lacked probable cause to arrest, imprison, or prosecute Plaintiff, the Ridgefield Defendants would be entitled to immunity based upon their reasonable, yet mistaken, belief that probable cause existed. Based on the foregoing, the Court finds that the individual Ridgefield Defendants, to the extent that Plaintiff's claims implicate individual persons, are immune from Plaintiff's federal law claims.

### 2. Respondeat Superior Liability

Summary judgment on the federal law claims is granted for the Ridgefield Police Department and the Borough of Ridgefield. Under § 1983, defendants cannot be held liable merely on a theory of respondeat superior. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, plaintiffs must allege either personal involvement in the constitutional violation or a policy or practice encouraging or contributing to the constitutional violation. *See id.* Plaintiff has not provided any evidence to support a conclusion that Ridgefield Defendants: (1) directed the CSX Defendants to arrest and imprison Plaintiff, (2) had actual knowledge and acquiesced to CSX

Defendants' alleged violation of Plaintiff's constitutional rights, or (3) had an official policy or custom that resulted in a constitutional violation.  In addition, Ridgefield Defendants cannot be held liable even under a theory of respondeat superior, because the CSX police officers are not under their control and supervision as established under New Jersey law.  *N.J.S.A*. 48:3-38.  Therefore, the Court grants Ridgefield Defendants' motion to dismiss Plaintiff's federal claims.

### 3.      **Common Law Claims**

N.J.S.A. 59:9-2(d) bars pain and suffering damages from a public entity or public employee unless the plaintiff proves by objective medical evidence that the injury is a permanent loss of a substantial bodily function.  Generally, mere psychological injury without physical injury is insufficient to constitute a permanent loss of bodily function.  *See Srebnik v. State* 245 N.J. Super. 344, 351 (App. Div. 1991).  Plaintiff failed to address this issue in his opposition papers.  Furthermore, Plaintiff has not provided objective medical evidence nor alleged any physical injury.  As Plaintiff provides no medical evidence nor alleges anything more than mental anguish and humiliation, the Court grants summary judgment to the Ridgefield Defendants on the state law claims.

## III.     CONCLUSION

After consideration of the parties' submissions and oral arguments, the Court finds that there are no genuine issues of material fact in dispute, and Defendants are entitled to summary judgment as a matter of law.  Accordingly, Defendants' motions for summary judgment are **GRANTED** and Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.


              s/William J. Martini            
              **William J. Martini, U.S.D.J.**